302 P.2d 534

A. O. IRWIN, Appellant,

v.

John W. MURPHEY and Helen G. Murphey, Appellees.

No. 6098.

Supreme Court of Arizona.

Oct. 23, 1956.

Robert D. Stauffer, Tucson, for appellant.

Boyle, Bilby, Thompson & Shoenhair, William A. Scanland and Wilbert E. Dolph, Jr., Tucson, for appellees.

PHELPS, Justice.

Appellant A. O. Irwin appeals from the judgment foreclosing a mortgage in which (1) his claim for the value of services and materials alleged to support said claim as a third-party beneficiary against the mortgagor Murphey, was rejected by the trial court, and in which (2) his claim of an alleged mechanic's lien against the mortgagor Luke was declared invalid.

On April 1, 1953, the defendants, Fred G. Luke and Victoria Luke, husband and wife, executed and delivered to John W. Murphey and Helen G. Murphey, husband and wife, defendants-appellees herein, a note in the face amount of $13,600, with interest at the rate of eight per cent per annum. As part of the same transaction the Lukes executed and delivered to the Murpheys a mortgage as security for the said note, mortgaging Lot 325, Catalina Foothills Addition, Pima County, Arizona, which was duly recorded on April 14, 1953. This mortgage and note were executed by the Lukes and delivered for the purpose of constructing a dwelling on said lot and, pursuant to the terms of an agreement reading as follows:

"Agreement

"This building loan agreement, made this 1st day of April, 1953, by and between John W. Murphey, party of the first part, and Fred G. Luke and Victoria M. Luke, his wife, parties of the second part, Witnesseth:

"The party of the first part hereby agrees to loan, for the purpose of constructing a dwelling house on Lot 325 of Catalina Foothills Estates No. 3, Pima County, Arizona, the sum of Thirteen Thousand Six Hundred Dollars ($13,600.00), to the parties of the second part; the said sum to be paid out according to the following schedule:

"The sum of $3,600.00 to be applied to the balance of the purchase price of the above mentioned lot;

"Ten percent (10%) of $10,000.00 when foundations of said dwelling are completed;

"Fifteen percent (15%) of $10,000.00 when the walls are up;

"Twenty percent (20%) of $10,000.00 when the house is framed and roofed and the windows are in place;

"Twenty percent (20%) of $10,000.00 when the plastering and sheetrock is completed;

"Thirty five percent (35%) of $10,000.00 when the house is completed and the loan agent (Leo B. Keith) has been paid his commission of $300.00.

"The above listed payments are to be made only upon certification by the Architect for this job, Mr. Jos. Th. Joesler, and provided the note and mortgage securing the said loan are not in default.

"Witness our hands the day and year first above written.

"(s) John W. Murphey
"(s) Fred G. Luke
"(s) Victoria M. Luke."

Shortly after April 14, 1953, construction was started on the mortgaged property. Murphey then paid out certain sums which he claims were made according to a payment schedule in the above agreement.

The mortgage note here involved provided for interest at eight per cent annually, payable monthly. The Lukes failed to make any interest payment whatever on the note. Consequently, Murphey brought this action to foreclose his mortgage, and to determine the rights of party defendants claiming mechanics' liens on the mortgaged property. Appellant Irwin among others, in his capacity as one of the alleged lien claimants, answered and filed a counterclaim against Murphey. Only Irwin appealed.

Irwin testified that on or about June 20 he was given a written order, signed by Fred Luke, directing Murphey to pay $1,498.95 out of the funds mentioned in the above construction agreement for the masonry work which he had completed at that time. He contends that his agent presented the order to one Rosemary Scruggs, secretary to Murphey, at a time when there

·were sufficient monies in the fund to cover ·the masonry work. He testified, however, that he was then told that there was only $95 left in the fund allocated under the construction agreement for work done by him. Irwin further testified that prior to ·that time he personally talked with Murphey regarding the financial stability of ·the Lukes. He asserts that he was misled by Murphey into entering into an agreement with the Lukes to construct the walls ·of the building by Murphey's failure to disclose to him that under his contract with Luke, Murphey was compelled to pay the ·sums mentioned in the agreement with Luke, upon receiving a certification from ·the architect that the work prescribed therein had been completed regardless of whether said amount had been used in the ·construction of that particular dwelling.

It is stipulated by counsel that Irwin has filed no notice of claim of lien in the County Recorder's office.

The specific findings of fact and conclusions of law made by the trial court at the ,request of counsel are:

That the Lukes executed the note and mortgage in question and that they entered into an agreement for the manner and method of the payment of the proceeds of the note, and that $8,139.70 was paid out by Murphey; that the dwelling house construction had been completely abandoned in August, 1953 (which of course is indi-

rectly a holding that the dwelling was not completed) and that although some materialmen had filed liens, appellant Irwin had failed to file a claim of lien for the unpaid labor and material which were furnished by him for the masonry construction of the proposed dwelling house.

In its conclusions of law the trial court determined (1) that the plaintiffs Murphey had a valid claim of $8,139.70, plus eight per cent interest, plus attorney's and other fees against the Lukes, (2) that Irwin had a valid claim against the Lukes for $1,498.-95 with interest, and (3) that Irwin had never perfected a laborer's and materialman's lien against the dwelling here in question, and that the claims of lien of other materialmen, although valid, were inferior and subordinate to plaintiffs' mortgage lien.

A judgment of foreclosure was ordered by the trial court directing that a special execution issue, and that the Pima County sheriff sell the secured real property to satisfy the plaintiffs' mortgage lien first, and second, all valid mechanics' liens in their order of priority. It is from this judgment that Irwin has appealed. Four principal questions are presented to us:

(1) Is appellant under the facts and circumstances of this case a third party creditor beneficiary?

(2) Was Murphey guilty of fraud as alleged in the counterclaim and was there proof that he was guilty as charged?

(3) Has Irwin a valid materialman's and laborer's lien against the building and premises upon which he performed work and labor?

(4) Did the court err in refusing to make findings of fact and conclusions of law requested by appellant, material to the determination of the issues in this case?

First, appellant Irwin asserts that he is a creditor beneficiary of the Luke-Murphey agreement executed April 1, 1953, above set forth haec verba. For authority on this question appellant cites the Restatement of the Law of Contracts, Sec. 133(1), and subsequent sections which deal with the rights of a creditor beneficiary. Section 133(1) provides as follows:

"(1) Where performance of a promise in a contract will benefit a person other than the promisee, that person is * * * (a) donee beneficiary, * * *;

"(b) a creditor beneficiary if no purpose to make a gift appears from the terms of the promise in view of the accompanying circumstances and performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary, * * *;

"(c) an incidental beneficiary if neither the facts stated in clause (a) nor those stated in clause (b) exist."

Appellant's argument is basically that he has performed construction work on a building owned by the promisee Luke and is entitled to recover from promisor Murphey under the terms of the contract between Murphey and Luke because performance of the promise by Murphey will satisfy an actual duty of the promisee Luke to the appellant.

This court has consistently held that it will generally follow the Restatement of Law unless a different rule has been pronounced by the court in prior decisions or by legislative enactment. Waddell v. White, 56 Ariz. 525, 109 P.2d 843; Ingalls v. Neidlinger, 70 Ariz. 40, 216 P.2d 387; Bristor v. Cheatham, 75 Ariz. 227, 255 P.2d 173; Rodriquez v. Terry, 79 Ariz. 348, 290 P.2d 248.

The Restatement makes it clear that there are three types of beneficiaries: (1) donee, (2) creditor, and (3) incidental. The Restatement was formally adopted and promulgated in 1932 and enunciates the rule that one for whose benefit a contract is made, although not a party to the agreement and not furnishing the consideration therefor, may maintain an action thereon against the promisor.

The Restatement appears to ignore the "intent" theory in creditor-beneficiary situations.

This court does not follow the liberal view of the Restatement relating to the

third-party creditor beneficiaries but has adopted the rule that the intent must be indicated in the contract itself. We dealt with the question in Treadway v. Western Cotton Oil & Ginning Co., 40 Ariz. 125, 10 P.2d 371, and recovery under the third-party creditor-beneficiary doctrine was denied because the agreement was held not made for the third person's benefit in that the alleged benefit was not intentional and direct. We expressly held in that case that the benefit contemplated must be intentional and direct.

Our latest pronouncement on this subject was made in the case of Seargeant v. Commerce Loan and Inv. Co., 77 Ariz. 299, 270 P.2d 1086, 1089, in which we said:

> "* * * There must be manifested in the language of the contract an intent on the part of Seargeant to assume and discharge O'Brien's obligation to the Loan Company. The promise of Seargeant to O'Brien must in effect be to pay to the Loan Company the $10,000 in order for the agreement to entitle the Loan Company to maintain a cause of action against Seargeant upon a third-party beneficiary contract. In legal effect the agreement must be such as to bind Seargeant to discharge O'Brien's obligation to the Loan Company."

The rule is stare decisis in this jurisdiction. Also see Pennsylvania Steel Co. v. New York City Ry. Co., 2 Cir., 198 F. 721, and Jackman Cigar Mfg. Co. v. John Berger & Son Co., 114 Ind.App. 437, 52 N.E. 2d 363, at page 367.

That the "intent" test is a valid legal requirement in these cases has been adequately summarized by a member of the Minnesota Bar in 29 Minnesota Law Review, at page 450.

Irwin claims the benefit of an agreement between the mortgagor Luke and the mortgagee Murphey. There are no express statements in the agreement indicating that any class of persons furnishing work, labor or materials on such dwelling or that Irwin or any person similarly situated, was to directly benefit from it or that Murphey intended to be bound to anyone other than Luke. Whether a third-party beneficiary is merely an incidental beneficiary, or one for whose express benefit the contract was entered into and therefore one who can maintain an action on the contract, is always a question of construction. 12 Am. Jur., Contracts, page 834. It would not be necessary in such an agreement to identify a beneficiary. It is sufficient if the agreement clearly showed an intent that Murphey was to pay directly any person who may furnish labor or material in the construction of such dwelling. See Sec. 139 Restatement of Contracts.

In its finding of fact the trial court stated:

> "That at the time of the execution of said note and mortgage, it was neces-

sary for the plaintiffs to hold in readiness, for payment under the aforesaid agreement, the total amount of the principal of said note, *but that none of the said funds were held in escrow or in trust for the benefit of any of the defendants."* (Emphasis supplied.)

In finding No. 7 the court recites:

"That none of the defendants, with the exception of the defendants, Fred G. Luke and Victoria M. Luke, had any argeement with the plaintiffs concerning the payment of any funds under the terms of the agreement between the plaintiffs and the defendants, Fred G. Luke and Victoria M. Luke, or for the payment for any materials or labor furnished for the improvement of the property described in the complaint."

On its face the contract merely provides for a proposed loan to finance the construction of a dwelling house on designated land. The funds were to be paid out according to a construction schedule and certification by an architect. The entire amount under the agreement could have been paid direct to the Lukes. Some of it was. To find that appellant Irwin was the direct and intentional beneficiary of this agreement, without supporting facts, would be to alter or add to or change the written contract of the parties. Under the law as laid down by this court and which

we feel is stare decisis, it definitely must appear that the parties intend to recognize the third party as the primary party in interest and, as privy to the promise, in order for the third party to recover. Seargeant. v. Commerce Loan and Inv. Co., supra; Pennsylvania Steel Co. v. New York City Ry. Co., supra; Alyea v. Citizens' Sav. Bank, 12 App.Div. 574, 42 N.Y.S. 185, affirmed on opinion 162 N.Y. 597, 57 N.E. 1103.

We will next consider the question of fraud claimed by Irwin.

An examination of the pleadings in this case discloses that the only allegation relating to fraud is found in Irwin's counterclaim and is as follows:

"That the plaintiff, John W. Murphey, did not perform those things to be by him performed in connection with the agreement (between Murphey and Luke) whereby a mortgage was drawn, in that the monies called for therein were not advanced, and A. O. Irwin was *defrauded* thereby, and, that it is inequitable that the plaintiff have a foreclosure of his mortgage, ahead of and prior to a foreclosure by this. defendant, of his mechanic's lien." (Emphasis supplied.)

The above allegation does not in legal effect allege actionable fraud and if true,. does not amount to fraud. It may lay a predicate for an action in debt but could not support an action in fraud.

The evidence failed to show actionable fraud in that no duty devolved upon Murphey to disclose the matters upon which Irwin relies as fraudulent. Stanbury, Inc., v. Massachusetts Bonding & Ins. Co., D.C., 90 F.Supp. 545; Restatement, Torts, Sec. 551. Murphey did permit Irwin to see and read said contract. What his duties are under its provisions is a question of law and not of fact.

We therefore hold there is no merit to the charge of fraud by Irwin in his counterclaim.

■ The third question involves Irwin's contention that he had a materialman's and laborer's lien upon the building and premises involved and that it was superior to Murphey's mortgage.

We have held so often that the statute relating to materialman's lien must be strictly followed in order to perfect such a lien that it would be superfluous to cite cases in support of it. There is no contention that Irwin has perfected his lien in accordance with the provisions of sections 62–201 and 62–202, A.C.A.1939, now sections 33–981 and 33–993, A.R.S.1956.

Irwin contends that the dwelling in question has not yet been completed and that his counterclaim in this case has the legal effect of perfecting his materialman's and laborer's lien against said premises. This of course has no merit whatever and no authority is cited to support it.

■ Plaintiffs' assignment of error based upon the court's refusal to permit him to cross-examine Rosemary Scruggs, private secretary to Murphey, as an adverse witness, and his argument concerning certain inferences which arise as a result of the failure of counsel for Murphey to call her as a witness, have become immaterial under our ruling above. Moreover, the statute providing for the cross-examination of witnesses does not encompass private secretaries of individuals. See Rules of Civil Procedure, Rule 43(g), 1956.

Finally, Irwin under assignments of error Nos. 4, 4a, 4b, 7 and 8, asserts that the trial court erred in refusing to make certain findings of facts and conclusions of law, relative to matters material to appellant Irwin's counterclaim.

A careful analysis of the trial court's findings and conclusions and the proposed findings and conclusions of Irwin, fails to show any material discrepancy. The findings and conclusions of the trial court substantially cover appellant's case in chief. Appellant requested certain findings and conclusions which were refused by the trial court. They were properly refused as not being justified by the evidence before the court.

For the reasons hereinabove stated it is ordered that the judgment of the lower court be affirmed.

LA PRADE, C. J., and UDALL, WINDES and STRUCKMEYER, JJ., concur.