485 P.2d 859

Reynaldo BASURTO, Appellant,

v.

UTAH CONSTRUCTION & MINING COMPANY, Inc., a Delaware corporation, Pima Mining Company, Inc., a California corporation, Appellees.

No. 2 CA–CIV 840.

Court of Appeals of Arizona,
Division 2.

June 4, 1971.

Rehearing Denied June 30, 1971.

Review Denied Sept. 28, 1971.

36

Miller, Pitt & Feldman, P. C., by David J. Leonard, Tucson, for appellant.

Browder, Gillenwater & Daughton, by Robert W. Browder, Phoenix, for appellees.

HOWARD, Judge.

The appellant, Reynaldo Basurto, the plaintiff below, brought an action against the appellees with regard to an industrial accident which occurred on the premises of the appellee Pima Mining Company, Inc., hereinafter referred to as Pima, while appellant was employed by Cascade Construction Company, hereinafter referred to as Cascade, an independent contractor of Pima doing construction work.

The undisputed facts show that on April 15, 1965, the appellee Utah Construction & Mining Company, hereinafter referred to as Utah, entered into a written contract with Pima whereby Utah agreed, inter alia, to do certain construction work in regard to the expansion of Pima's copper concentrator located at Pima Mines. The work required by the contract included a new crushing plant, conveyor systems, expansion of fine ore storage, grinding, flotation, concentrate handling, lime re-agent facility, tailings disposal facilities and a railroad spur.

For reasons not divulged by the facts, on July 1, 1966, the contract entered into by Utah and Pima was assigned to Cascade, a corporation whose stock was wholly owned by Utah. The assignment was in writing

and agreed to by the assignee, Cascade, and Pima which assumed all obligations thereunder. The record further shows that after the accident, appellant Basurto, filed a workmen's compensation claim for the injuries he received.

On March 5, 1969, the defendants moved the court for summary judgment. The hearing date for the motion was subsequently vacated and the hearing was continued subject to call. On December 8, 1969, at the pretrial, the following admissions and stipulations were entered into between appellant and appellees: (1) That the plaintiff was an employee of Cascade Construction Company at the time of the accident in question; (2) Pima Mining Company was the owner of the premises where the action occurred; (3) that at the time of the accident Cascade Construction Company was an independent contractor as to Pima Mining; (4) when the contract was entered into, Utah Construction was an independent contractor and at all times Utah Construction & Mining Company, Inc., performed construction work (at oral argument both counsel agreed that this meant that no construction work was done by Utah after Cascade took over the job); (5) that Utah Construction & Mining Company, Inc., actually performed under the contract prior to the assignment.

No mention was made in the pretrial order of the pending motion for summary judgment. The case was set for trial on December 17, 1969, and on that day, in the judge's chambers, prior to trial, counsel stipulated as follows:

* * * * * *

"* * * that at the time of the accident and at all times material hereto, Pima Mining Company had in its employ three or more workmen regularly employed in its business, and that Pima Mining Company is subject to the Workmen's Compensation Laws of Arizona.

It is further stipulated that the claim of the Pltf. against Utah Construction & Mining Company is not predicated on any negligence of Utah or its employees, but is on a contract basis as stated in the Pre-Trial Order.

It is further stipulated that the Defts. can at this time make a motion for summary judgment and that as to the Deft. Utah Construction & Mining Company, Exhibits 1 and 2 are already in evidence, being the contract between Utah and Pima and the assignment from Utah to Cascade, and that the Court can consider those in determining whether or not Utah has a contractual liability to the Pltf.

It is further stipulated that the legal arguments have been presented to the Court and will not be repeated on the record, the position of the Deft. being in general that the Pltf. does not have a claim as a third party beneficiary of either Exhibits 1 or 2 as against Utah. As to the Deft. Pima Mining Company, its motion for summary judgment is based on the proposition that if in fact there were sufficient evidence from which a jury could be permitted to find that Pima retained or assumed and exercised control over the method and manner by which the Cascade employees did the work of installing the pipe, that in such case, based on the other stipulated facts, Pima would then be a statutory employer of the Pltfs. under the Workmen's Compensation Laws of this state and Pltf's exclusive remedy would be under the Workmen's Compensation Laws.

* * * * * *

It is further stipulated that at the time of the accident, Cascade and its employees, including the Pltf., were in the process of installing pipe which would become an integral part of the mining and milling operations of Pima Mining Company, and that although Pima Mining Company is not a licensed contractor, it has on occasion hired its own employees to do similar work; that is, to install pipes which would become an integral part of the mining and milling process."

* * * * * *

The court granted summary judgment for both Utah and Pima and appellant lodged this appeal.

With respect to his claim against Utah, appellant Basurto contends that he is a third-party beneficiary of the contract entered into between Utah and Pima and that the assignment of the contract to Cascade did not change Utah's liability.

As to Pima, appellant contends that Pima retains sufficient control of the work to be responsible for appellant's safety and that Pima, as the owner of the premises, is vicariously liable to employees of its independent contractor as a result of the inherently dangerous nature of the work being performed.

## THE CLAIM AGAINST UTAH

Paragraph 2.4.4 of the contract between Utah and Pima provides:

*"Protection of the Public, and Work, and Proporty* [sic] The Contractor shall provide and maintain all necessary watchmen, barricades, red lights and warning signs and take all necessary precautions for the protection and safety of employees on the work, of all other persons and adjacent private and public property. The Contractor at all times shall maintain adequate protection of the work from damage and shall protect the Owner's property and all persons thereon from injury, damage or loss by reason of any act or omission of the Contractor or any Subcontractor."

Paragraph 9.1 of the contract states:

*"Indemnity by Contractor* The Contractor shall save harmless and indemnify the Owner from and against any expense, loss or damage on account of any claim, demand or suit made by any person whomsoever, including any employee of the Owner, which is in any way caused by or connected with, or grows out of the execution and performance of this Contract by the Contractor or any subcontractor; provided, however, that the Contractor shall not be required to indemnify the Owner against any loss caused solely by the negligence or wilful fault of the Owner or its employees.

The Contractor accepts all risk of injury or damage and all responsibility for any claims for damages whatsoever resulting from the use, misuse, or failure of any hoist, rigging, blocking, scaffolding, or other like or unlike equipment used by the Contractor or any subcontractor, even though such equipment be furnished or loaned to the Contractor or any such Subcontractor by the Owner, and shall indemnify the Owner against all such claims."

The assignments of the contract provides, inter alia:

"1. Assignor hereby assigns to Assignee all of Assignor's right, title and interest in and to said construction contract and any amendments or change orders made or to be made thereto;

2. Assignee hereby accepts such assignment and assumes and undertakes to perform all of the obligations of said construction contract and any amendments or change orders made or to be made thereto;

3. In consideration of the consenting to such assignment by owner, Assignor hereby guarantees to Owner the performance by the Assignee of all of the obligations, duties and undertakings of said construction contracts; * * *."

Appellant asserts that the contractual liability of Utah Construction Company rests upon the terms of the original contract between Utah Construction Company and Pima and not upon the terms of the assignment. Utah contends that its liability, if any, should rest upon the guarantee set forth in the assignment. In deciding Utah's liability we shall, for the purpose of this opinion, assume the strongest case in favor of the appellant, to-wit, that Utah is still a party to the contract and that the assignment and the terms therein have not created any new relationship between Utah and Pima.

Appellant cites several cases in support of his proposition that he is a third-party beneficiary under the contract be-

tween Utah and Pima.[1] Although Arizona recognizes the right of third-party beneficiaries to sue on a contract, the Arizona courts, contrary to the Restatement of the Law of Contracts, § 133(1) (b), do not follow the liberal view of the Restatement relating to third-party creditor beneficiaries but has rather adopted the rule that before a person can claim to be a third-party beneficiary, the intention to benefit the third person *must be indicated in the contract itself.* Irwin v. Murphey, 81 Ariz. 148, 302 P.2d 534 (1956). As the court stated in Irwin v. Murphey, supra:

" * * * We dealt with the question in Treadway v. Western Cotton Oil & Ginning Co., 40 Ariz. 125, 10 P.2d 371, and recovery under the third-party creditor-beneficiary doctrine was denied because the agreement was held not made for the third person's benefit in that the alleged benefit was not intentional and direct. We expressly held in that case that the benefit contemplated must be intentional and direct."

Not only must the benefit be intentional and direct but the third person must be the real promisee.[2] The promise must be made to him in fact although not in form and it is not enough that the contract may operate to his benefit but it must appear that the parties intended to recognize him as the *primary* party in interest and as privy to the promise. Seargeant v. Commerce Loan & Inv. Co., 77 Ariz. 299, 270 P.2d 1086 (1954). This theory has been subsequently adhered to in the case of California Cotton Oil Corporation v. Rabb, 88 Ariz. 375, 357 P.2d 126 (1960). If the appellant is merely an incidental beneficiary then he cannot recover under the contract. Whether the third-party beneficiary is merely an incidental beneficiary, or one for whose express benefit the contract was entered into and therefore one who can maintain an action on the contract, is always a question of construction. Irwin v. Murphey, supra. Being a question of construction of the contract, it is a question of law for the court. Kintner v. Wolfe, 102 Ariz. 164, 426 P.2d 798 (1967).

The cases of Giarratano v. Weitz Co., supra; Blount Brothers v. Rose, supra; Presser v. Siesel Construction Co., supra, and Smith v. Ledbetter Brothers, Inc., supra, do not stand for the proposition that a contractual provision similar to the one in the case sub judice gives the beneficiary of the provision a cause of action on the contract itself.[3] Rather, these foregoing cases stand for the proposition that such a provision creates a duty upon which one can base a case in *negligence* for the failure to perform the duty created by reason of the contractual obligations. Noting that the plaintiff in this case has stipulated that his claim against Utah Construction Company is not predicated on any negligence of Utah or its employees but is on a contract basis, we are unable to see how these cases can benefit the plaintiff. Instead, we refer to the case of Iowa Power & Light Company v. Abild Construction Co., 259 Iowa 314, 144 N.W.2d 303 (1966), wherein the court in construing the con-

1.  Giarratano v. Weitz Co., 259 Iowa 1292, 147 N.W.2d 824 (1967) ; Blount Brothers Construction Co. v. Rose, 274 Ala. 429, 149 So.2d 821 (1962) ; Presser v. Siesel Construction Company, 19 Wis.2d 54, 119 N.W.2d 405 (1963) ; Smith v. Ledbetter Brothers, Inc., 111 Ga.App. 238, 141 S.E.2d 322 (1965). Also cited is Gobos v. George A. Fuller Co., 5 A.D.2d 773, 170 N.Y.S.2d 56 (1958). The reading of this latter case and the authority cited therein indicates that the undertaking contained a provision whereby the contractor agreed to pay for any damages. See for example, Vance v. Yonkers Contracting Co., Inc., 280 App.Div. 839, 113

N.Y.S.2d 733 (1952), cited in *Gobos* wherein the undertaking stated that it "shall protect the owners of adjacent property from injury arising from the carrying out of this contract, and shall make good any such damage and injury * * *."

2.  The "intent to benefit" and "primary party" criteria have been criticized by legal writers. See 54 Virginia Law Review 1166 (1968) and 57 Columbia Law Review 406 (1957).

3.  However, the dicta in Blount Brothers Construction Co. v. Rose, supra, so states.

tractual provisions of the same tenor of the one in the case at bench states:

"The terms relied on appear to involve only the relationship between the parties and are designed to protect the owner from faulty workmanship and liability to the workmen or public which might result from the contractor's failure to do the work in a workmanlike manner or provide all the necessary safeguards. It is this type of provision which would expressly give the owner the right of indemnity against the contractor for injuries sustained by a workman or the public generally." at 313.

■ We agree with the trial court. In the absence of negligence he cannot recover against Utah.

## THE CLAIM AGAINST PIMA

■ Appellant does not contend that Pima itself was negligent toward him. Rather, he contends that the work which Pima contracted with Utah to perform was inherently dangerous and that Pima should have recognized the work as involving a peculiar risk of bodily harm. Appellant therefore contends that Pima is vicariously liable to him for the negligence of Cascade, appellant's employer. This contention is based upon the theory that although Cascade is an independent contractor the inherently dangerous character of the work

places Pima within the exceptions set forth in the Restatement of Torts (Second) §§ 413, 416 and 427.[4]

Appellant's contention was advanced in the case of Welker v. Kennecott Copper Company, 1 Ariz.App. 395, 403 P.2d 330 (1965). In rejecting same this court held that the sections of the Restatement cited by appellant do not apply to the employees of an independent contractor. See also E. L. Jones Construction Company v. Noland, 105 Ariz. 446, 466 P.2d 740 (1970).

This does not however, terminate the issue of Pima's liability. For the purpose of the summary judgment the question of retained or assumed control on the part of Pima was still in dispute. It was the position of Pima that even assuming it retained or assumed and exercised control over the method and manner by which Cascade employees did the work of installing the pipe, that Pima would be a statutory employer of the plaintiff under Workmen's Compensation Laws and that plaintiff's exclusive remedy would be under such laws.

A.R.S. § 23–902(B) provides as follows:

"B. When an employer procures work to be done for him by a contractor over whose work he retains supervision or control, *and such work is a part or process in the trade or business of the employer*, then such contractors and the persons employed by him, * * * are,

---

4. Section 413 provides:

"One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer

(a) fails to provide in the contract that the contractors shall take such precautions, or

(b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions."

Section 416 provides:

"One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physi-

cal harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise."

Section 427 provides:

"One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger."

within the meaning of this section, employees of the original employer." (Emphasis added).

A.R.S. § 23–1022(A) provides as follows:

"A. The right to recover compensation pursuant to the provisions of this chapter for injuries sustained by an employee shall be the exclusive remedy against the employer, * * * except as provided by §§ 23–906 and 23–964, and except where the injury is caused by the employer's * * * wilful misconduct and the act causing the injury is the personal act of the employer himself * * * or if the employer is a partnership, on the part of one of the partners, or if a corporation, on the part of an elective officer thereof, and the act indicates a wilful disregard of the life, limb or bodily safety of employees, in which event the injured employee may, at his option, either claim compensation or maintain an action at law for damages."

The applicability of A.R.S. § 23–902(B) turns on whether or not the work being done by Cascade was work that is "part or process in the trade or business" of Pima.

The purpose of such a statutory provision is ably set forth in the case of Jamison v. Westinghouse Electric Corporation, 375 F. 2d 465 (3rd Cir. 1967):

"The general purpose of such statutes is to afford workmen's compensation protection to injured employees of uninsured contractees by imposing secondary liability therefor upon the contractor who let out the work. The requirement that the work performed by the employees of the contractee must be part of the 'regular business' of the contractor emphasizes the purpose of the statute to prevent evasion of the Act by an employer through the device of subcontracting its regular operations and thereby avoiding direct employment relations with the workers and making them dependent on their immediate employer for compensation. See generally 1A Larson, Workmen's Compensation (1966), § 49.11; * * *." at 468.

In view of the purpose of such statutes, the general rule of thumb is that the statute covers all situations in which work is accomplished which this employer, or employers in a similar business, would ordinarily do through employees. 1A Larson, Workmen's Compensation (1967) § 49–12.

We now turn our attention to the stipulation entered into by the parties and upon which the court based its summary judgent. We find they stipulated that " * * * at the time of the accident, Cascade and its employees, including the Pltf., were in the process of installing pipe which would become an integral part of the mining and milling operations of Pima Mining Company, and that although Pima Mining Company is not a licensed contractor, it has on occasion hired its own employees to do similar work; that is, to install pipes which would become an integral part of the mining and milling process."

In our opinion Pima's reliance on such a stipulation begs the question. Pima takes a much too limited view of the statute and case law. The issue is not whether its own employees installed pipe, but whether or not its own employees regularly and ordinarily do the type of work which Cascade contractually agreed to do, to-wit, construction of a crushing plant, conveyor systems, expansion of fine ore storage, grinding, flotation, concentrate handling, lime re-agent facilities, tailing disposal facilities and railroad spurs. Cf. Moak v. Link-Belt Company, 229 So.2d 395 (La.App.1969).

To support its view Pima cites the case of Lessley v. Kansas Power & Light Company, 171 Kan. 197, 231 P.2d 239 (1951). The Kansas court, fearful of a rule that would negate statutory employer status, has adopted a very restricted construction. The Kansas test is "whether the work contracted to be done was a part of appellee's trade or business." The Kansas court pursues the question no further and demonstrates its reasons for its reluctance when it states:

"If under the same circumstances upon which he here relies in a common-law

action the appellant had sought relief for some injury under the Workmen's Compensation Act, he would have been entitled to and would have received the benefit of such liberal construction. It would be ironical to apply a different rule simply because in this instance he chooses another course. It would also be unfair to other workmen whose interests may well be affected in the future." At 248.

In other words, Kansas fears that a liberal interpretation of the statute would detract from the impact and salutary effects of the Workmen's Compensation Act. The Kansas argument is answered in Jamison v. Westinghouse Electric Corporation, supra, wherein the court states:

"Courts must be careful not to enlarge beyond its proper limits the statutory employment relationship, out of consideration for the injured employee's right to workmen's compensation. For we must recognize that although the Workmen's Compensation Act was designed to provide compensation to employees for their injuries without regard to the negligence of their employer, the statutory employer provision has come increasingly to be used as a shield to avoid heavy negligence recoveries against remote parties who have contracted with the injured workman's immediate employer. See McSparran v. Hanigan, 225 F.Supp. 628, 635 (E.D.Pa.1963) Aff'd 356 F.2d 983 (3 Cir. 1966)." 375 F.2d at 470.

We believe the test as set forth in Larson and Jamison v. Westinghouse Electric Corporation, supra, is more in keeping with the purpose and spirit of A.R.S. § 23–902(B).

We believe that factual issues still exist as to whether or not Pima is a statutory employer under the rules which we adopt in this opinion. Further, since the question of control over the work is still in doubt, it is evident that Pima cannot prevail under the present record in a motion for summary judgment.

Judgment is affirmed as to Utah and reversed as to Pima for further proceedings consistent with this opinion.

KRUCKER, C. J., and HATHAWAY, J., concur.