601 P.2d 612

Dan W. CLARKE and Eileen J. Clarke, husband and wife, Plaintiffs/Appellees,

v.

ASARCO INCORPORATED, a New Jersey Corporation, Defendant/Appellant.

No. 2 CA–CIV 2926.

Court of Appeals of Arizona, Division 2.

Dec. 21, 1978.

Rehearing Denied Jan. 31, 1979.

Review Granted Feb. 21, 1979.

Stanfield, McCarville, Coxon, Cole & Fitzgibbons by David A. Fitzgibbons, Casa Grande, for plaintiffs/appellees.

Evans, Kitchel & Jenckes, P. C. by Burton M. Apker, Lex J. Smith and Barry J. Dale, Phoenix, for defendant/appellant.

## OPINION

RICHMOND, Chief Judge.

This is an appeal pursuant to A.R.S. § 12–2101.01 from the denial of a motion to compel arbitration. The issue is whether the terms of a subordination agreement executed by ASARCO nullified the arbitration provision in its lease with Dan W. Clarke and Eileen J. Clarke, husband and wife. In denying the motion to compel arbitration, the trial court found that the subordination agreement so modified the relationship of the parties to the lease that the arbitration provision was rendered inapplicable. We disagree.

Pertinent portions of the lease between ASARCO as lessor and the Clarkes as lessees, for a term commencing January 1, 1976, and ending December 31, 1977, are as follows:

22. CROP LIEN SUBORDINATION: Lessor hereby agrees that during the term hereof it will execute any and all such documents as may be proper and necessary to subordinate its interest in and to any crops grown upon the premises to the lien of any person financing the growing of such crops.

\*   \*   \*   \*   \*   \*

30. RIGHT TO EARLY TERMINATION: Lessor reserves the right to terminate this Lease at any time upon giving to Lessees written notice of such termination not less than thirty (30) days prior to such termination. In the event of such an early termination, either:

1. Lessor shall pay to Lessees an amount equal to Lessees' investment in the crops growing on the premises at the time of such termination and which have not at such time matured, and Lessees shall have the right to harvest the crops growing on the demised premises which have at such time matured, or

2. At the Lessor's sole option and as an alternative to the foregoing, Lessor shall pay to Lessees the cash value of the crops growing on the premises at the time of such termination less the costs and expenses which would have been necessarily expended by Lessees in order to mature and harvest such crops.

In the event the parties are not able to agree upon all matters covered by this paragraph, such matters which are in dispute shall be settled by arbitration under the laws of the State of Arizona.

On January 7, 1977, ASARCO executed a "Subordination of Interest" in favor of Producers Cotton Oil Company, authorizing the Clarkes as "Grower" to grant to Producers as "Company" a security interest in crops (together with the proceeds thereof) to be grown on the leased premises during the 1977–78 cropping season, and providing:

Until the indebtedness of Grower to Company has been fully repaid with interest and charges, if any, the undersigned hereby subordinates all interest or lien which he may have or claim to have in said crops, products and proceeds, how-

ever claimed or acquired, to the lien and rights of said Company under any Financing Statement, Security Agreement, or any such other contractual obligation executed and entered into by Grower. Should the undersigned take possession of the said real property for any reason prior to the complete production, harvesting and removal of the crops growing or to be grown thereon, the undersigned agrees to permit the complete production, harvesting and removal of said crops by said Grower and said Company, or either of them unmolested by the undersigned.

IT IS UNDERSTOOD THAT BY THIS SUBORDINATION, THE UNDERSIGNED IN NO WAY RELEASES, WAIVES OR IMPAIRS THE OBLIGATIONS OF GROWER TO THE UNDERSIGNED.

On April 13, 1977, ASARCO gave written notice pursuant to paragraph 30 of the lease that it was exercising its right to early termination. Thereafter, the Clarkes commenced this action for breach of the lease and ASARCO filed its motion to compel arbitration. The trial court denied the motion on the basis that

\* \* \* the Subordination Agreement so modified the relationship of the parties under the original agreement that an alleged breach thereof is not subject to the arbitration provision inasmuch as the thirty (30) day period was thereby eliminated.

The provisions of paragraph 30 of the lease and the subordination agreement are clearly in conflict. The Clarkes, however, were not a party to the subordination agreement, which was executed by ASARCO pursuant to paragraph 22 of the lease. As between ASARCO and Producers, the former agreed to waive its right to exercise some of the various options under paragraph 30 of the lease. Whether or not this modified ASARCO's agreement with the Clarkes depends on whether they were a third-party beneficiary of that portion of the subordination agreement. If the Clarkes were merely an incidental beneficiary, they had no standing to rely on the

subordination agreement and the lease agreement was not modified. *Cf. Basurto v. Utah Construction & Mining Company,* 15 Ariz.App. 35, 485 P.2d 859 (1971).

■ It is the rule in Arizona that before a person can claim to be a third-party beneficiary, not only a benefit but the intention to benefit the third person must be indicated in the contract itself. *Irwin v. Murphey,* 81 Ariz. 148, 302 P.2d 534 (1956). The question is one of construction, and thus a question of law for the court. *Basurto v. Utah Construction & Mining Co.,* supra. As to the Clarkes, not only is no such intention expressed in the subordination agreement but the capitalized portion disclaiming any release, waiver or impairment of their obligations to ASARCO indicates the contrary. The provision by which ASARCO agrees, in the event it should take possession of the premises prior to the complete production, harvesting and removal of the crops, to permit such completion, harvesting and removal by either the Clarkes or Producers is consistent with the subordination by ASARCO of any interest or lien it may have in the crops or proceeds thereof to the security interest of Producers. Early termination and arbitration under paragraph 30, however, may have no adverse effect on Producers, hence the incidental benefit to the Clarkes, if any, may never arise.

■■ Alternatively, the Clarkes contend that even if the arbitration provision was not nullified by the subordination agreement, the breach of the latter precludes the enforcement of the former, and that in any event the arbitration clause, which was drafted by ASARCO, is unenforceable because it is vague, ambiguous and uncertain. Our holding that the Clarkes have no standing to assert a claim under the subordination agreement disposes of the first contention. The language of the arbitration clause refutes the second. The procedure to be followed when not otherwise specified in a written arbitration agreement is clearly set forth in the Uniform Arbitration Act, A.R.S. § 12–1501, et seq.

The order denying the motion to compel arbitration is vacated and the case remanded with directions to enter an order staying further proceedings pending arbitration of the dispute under paragraph 30 of the lease agreement.

Reversed and remanded.

HOWARD, J., concurs.

HATHAWAY, Judge, dissenting.

The agreement for crop lien subordination was bargained for between the lessor and lessees and is provided in paragraph 22 of the lease. The obvious purpose is to afford the grower security for financing the farming understood by all parties to be undertaken under the lease. The subordination agreement directed to the lender is given in consideration "of such advances of money as may be made to" the grower by the lender "under its usual and customary financing arrangements." It further provides that lessor "does hereby authorize grower to grant . . . a security interest in all the crops and products and proceeds thereof, growing or to be grown during the cropping season."

Unlike the agreement in *Irwin v. Murphey,* supra, the subordination agreement in the instant case, to my view, expressly provides benefits to appellees. I believe that the language giving the grower and the lender "or either of them" the right to complete the production, harvesting and removal of crops clearly indicates an intent to benefit the grower satisfying *Irwin v. Murphey.* Thus, I conclude that the Clarkes are more than an incidental beneficiary and have standing to rely on the subordination agreement. Nor do I agree that the capitalized portion detracts from their standing. It simply reaffirms that the grower will be held to his obligations. The language does not take back the rights given in the immediately preceding paragraph to grow, harvest and remove crops.

Since the subordination agreement is in conflict with paragraph 30 of the lease and supersedes it, lessor has relinquished the right to early termination. I would affirm.