662 P.2d 1031

**Johnny M. WORD, a single man, Plaintiff-Appellant,**

v.

**MOTOROLA, INC., a Delaware corporation, Defendant-Appellee.**

No. 1 CA–CIV 5411.

Court of Appeals of Arizona, Division 1, Department B.

Aug. 19, 1982.

Rehearing Denied Oct. 12, 1982.

Review Granted Nov. 9, 1982.

Bentley, Brandes & Brandes, P.C. by Richard N. Brandes, Phoenix, for plaintiff-appellant.

Andrews, Marenda & Moseley, P.A. by Dale E. Marenda, Phoenix, and Michael D. Mercier, Tempe, for defendant-appellee.

## OPINION

RICHARD M. DAVIS, Judge, Pro Tem.

The question presented by this appeal from a summary judgment is whether the appellee manufacturer conclusively demonstrated that it was the "statutory employer" of a workmen's compensation recipient so as to bar his third party tort action under the exclusive remedy rule. We hold that it did, and affirm.

Appellant alleges an injury at a plant facility of Motorola's Government Electronics Division on April 10, 1978. Appellant, a sheet metal worker, was hanging air-conditioning ductwork at the time. The ductwork installation was part of a major remodeling of the "1500 area" within the Motorola plant. Appellant was climbing on an elevating device called an Econolift and he alleged that a portion of it slipped, resulting in an injury to his knee.

Appellant was employed by Paramount Design Systems, Inc., at the time of the incident. Paramount was one of four or five companies which were under contract to supply laborers to Motorola. Appellant had been "hired" or accepted to work at Motorola in March of 1978 by Gary Skelton, a foreman in Motorola's construction and maintenance department. Ronald Zardus was manager of the department. Damon Begley was the supervisor between Zardus and Skelton. Ira Abel was a sheet metal worker employed by Motorola. He worked on the second, or night, shift. Appellant was hired as a "helper" for Abel. All of appellant's work orders and supervision came from Motorola personnel, principally Abel. Just prior to April 10, Skelton and other Motorola supervisory personnel had made a decision to terminate appellant's services. They were dissatisfied with his performance. The reason given to appellant was that work was getting slow.

Under Paramount's contact with Motorola, Paramount had no specified operating duties beyond the duty of supplying a variety of types of workmen to Motorola—the latter's request. Motorola reserved the right to terminate any employee, and it also reserved the right to hire for itself any workman provided by Paramount, during a specified period. Appellant and other employees provided by Paramount were paid by Paramount. Paramount was contractually required to provide workmen's compensation insurance coverage, and certain other kinds of insurance coverage.

The acceptance of workmen's compensation benefits constitutes the exclusive remedy against an employer. A.R.S. § 23–1022(A); *Southwest Cooperative Wholesale v. Superior Court,* 13 Ariz.App. 453, 477 P.2d 572 (1970). A "statutory" or constructive employer pursuant to A.R.S. § 23–902(B) is also entitled to the benefit of the exclusive remedy provision. *See Livingston v. Citizen's Utility, Inc.,* 107 Ariz. 62, 481 P.2d 855 (1971), and *Basurto v. Utah Construction & Mining Co.,* 15 Ariz.App. 35, 485 P.2d 859 (1971). § 23–902(B) provides as follows:

> When an employer procures work to be done for him by a contractor over whose work he retains supervision or control, and such work is a part or process in the trade or business of the employer, then such contractors and the persons employed by him, and his sub-contractor and persons employed by the sub-contractor, are, within the meaning of this section, employees of the original employer.

■ Thus, there are two requirements for statutory employment. The workman's labor must be supervised or controlled by the constructive employer *and* it must be part or process of the constructive employer's trade or business. The appellant here concedes the element of supervision and control. He challenges only the second element—the conclusion that his work was "part or process" of Motorola's trade or business. More specifically, appellant contends that appellee as a movant for summary judgment failed to satisfy its initial burden to show that the remodeling of the 1500 area was part or process of Motorola's principal trade or business, manufacturing. Appellant relies for his contention upon the *Basurto* case, *supra.*

In *Basurto,* Division Two of this Court held that it was not sufficient for one seeking to show itself to be a statutory employer to show that its own employees "sometimes" engaged in a particular capital improvement activity. Instead, it had to be shown that its own employees "regularly and ordinarily" engaged in capital improvement activities of the general nature contracted out. The test derived by the *Basurto* court is consistent with the following observations made in 1C Larson, *Workmen's Compensation Law,* (1980) § 49.12:

Practically all of the cases of general interest interpreting this type of statute are addressed to one question: When is the sub-contracted work part of the regular business of the statutory employer? The statutory language lying behind this question varies somewhat. Some acts speak of work which is "part of or process in" the employer's trade or business, perhaps excluding, for good measure, work which is "merely ancillary and incidental" to such trade or business, and sometimes requiring that the work be on or about premises under the control of the employer; some use the phrase "any work which is a part of his trade, business or occupation"; and there are many other variants. But, with a surprising degree of harmony, the cases applying these assorted phrases agree upon the general rule of thumb that the statute covers all situations in which work is accomplished which this employer, or employers in a similar business, would ordinarily do through employees. (footnotes omitted).

As we approach the issue before us we are mindful of the relevant postural principles, well stated in a statutory employment case, *Livingston v. Citizen's Utility, Inc., supra:*

In considering a motion for summary judgment, we must view the evidence in a light most favorable to the losing party and give such party the benefit of all favorable inferences that may be reasonably drawn therefrom. If the evidence thus viewed is such that reasonable men may reach different conclusions as to whether there is a genuine issue as to any material fact, the judgment must be reversed. Summary judgment should not be granted if, upon examination of the entire record, it is determined that there is a disputed fact which, if true, could affect the final judgment. Litigants are entitled to a trial where there is the slightest doubt as to the facts. Further, although certain basic facts are undisputed, if factual inferences must be drawn therefrom in order to render judgment and reasonable minds could draw different inferences, summary judgment is not proper. *Id.* 107 Ariz. at 64, 481 P.2d 855 (citations omitted).

Initially, we note the narrowness of the question before us. The parties have come to grips on the proper application of the rule of the *Basurto* case. There is no contention that any special rule should apply to employees of suppliers of temporary labor who are directly supervised by the party asserting statutory employer status. Nor are we aware of any trend in that direction. *Compare Moses v. Vulcan Materials Co.,* 388 So.2d 117 (La.App.1980).

We also think it appropriate to note our agreement with the general principles of

construction given to § 23–902(B) in the *Basurto* case. *Basurto* involved the contracting out of an entire capital improvement project. An employee of the construction company's assignee sued the landowner. Our sister court disapproved a rule which would promote a broad construction of § 23–902(B) to defeat third party actions. § 23–902(B) was designed to insure the universality of workmen's compensation coverage by preventing its evasion by an employer who might seek to contract out his basic operations to uninsured parties. The statute should in our view be construed as broadly as necessary to prevent the evil perceived, but it should not be stretched to defeat common law third party tort liability.

■ As noted, the question posed by the parties is whether appellee demonstrated that appellant was engaged in a task which was part or process of its trade or business. While no affidavit or other sworn material squarely and explicitly went to this subject, we are persuaded after a careful reading of the depositions and other materials that the question must be answered in the affirmative.

The construction and maintenance department manager Ron Zardus testified that the 1500 area was being converted from a production line area to a highly secured area. He also gave the following testimony under cross-examination by appellant's counsel:

A. I work for Motorola.

Q. What do you do there?

A. I'm a Facility Space Administrator.

Q. What does that mean?

A. I lease buildings and trailers for the division of Motorola that I work for. I assign space within the building for projects, new projects and set up of assembly areas and other types of things.

Q. Were you so employed in that position in 1978?

A. No, sir.

Q. What was your position at or about April, 1978?

A. I was the manager of the construction and maintenance department within the plant engineering.

Q. Will you tell us, sir, what your duties were at that time?

A. Well, I was responsible for approximately 120 men on three different shifts, first shift, second shift and third shift. And the third shift was the janitorial shift and the other two shifts were the construction and maintenance of the building.

The Zardus deposition in its entirety and the depositions of Skelton, Abel and the other two Motorola (formerly Paramount) employees Ditert and Madrid indicate the presence of a substantial and relatively permanent Motorola work force devoted in part to construction and remodeling as well as the maintenance of plant facilities. Abel and other sheetmetal workers had a sheet metal shop within the facility to work from.

All indications point to the fact that appellant was hired on a temporary basis to supplement a substantial existing Motorola work force working on a project within the range of its usual activities. It is not suggested that the size of the supplemental labor force was itself of material significance. Sheet metal work was regularly performed by Motorola employees.

As Larson states, the test for statutory employment in an auxiliary activity such as construction or remodeling must be relative, rather than absolute. 1C Larson's *Workmen's Compensation Law* (1980) § 49.12. The treatise states:

The activities which produce most of the close cases are the same activities which have caused difficulty in the employee-independent-contractor distinction, * * *: peripheral and auxiliary operations such as maintenance, construction, and delivery. Here again the test must be relative, not absolute, since a job of construction or repair which would be a nonrecurring and extraordinary undertaking for a small business might well for a large

plant be routine activity which it normally expects to cope with through its own employed staff. Ordinarily construction work, such as building a factory structure, installing a conveyor system, moving laboratory equipment, putting in new partitions, making electrical installations, road widening, excavating, replacing a heating system, changing the pipes, putting in a septic tank, bricking up the windows, replacing the floor, building a fence, building a canopy for a small grocery store or replacing shoe racks, would be considered outside the trade or business of a manufacturing or mercantile establishment. But if the defendant is a business which by its size and nature is accustomed to carrying on a more or less ongoing program of construction, replacement, and maintenance, perhaps even having a "construction division," or which can be shown to have handled its own construction in the past, a job of construction delegated to a contractor will be brought within the statute. (footnotes omitted).

Under all of the circumstances disclosed by the record here, it is clear that the work which appellant was doing was part of the ordinary and regular duties of Motorola personnel. No reasonable inference can be drawn to the contrary, and nothing which we find in the record gives rise to a genuine issue of material fact.

Appellant has also briefly argued that appellee is "quasi-estopped" from asserting its employer status because at some unspecified point in the workmen's compensation proceedings it took the position that it was not the employer liable to pay workmen's compensation. Appellant's "quasi-estoppel" authority is *Sailes v. Jones,* 17 Ariz.App. 593, 499 P.2d 721 (1972), a factually irrelevant case. In his reply brief appellant states that "Motorola * * * was not a party of [sic] the workmen's compensation proceedings and the issue of Motorola's status, in relation to appellant was never raised nor decided by the Industrial Commission."

There is nothing in the present record to indicate that Motorola is now estopped, or "quasi-estopped", to assert its status as a statutory employer.

The judgment of the Superior Court is affirmed.

JACOBSON and GRANT, JJ., concur.

NOTE: The Honorable RICHARD M. DAVIS, a Judge pro tem. of a court of record, has been authorized to participate in this matter by the Chief Justice of the Arizona Supreme Court, pursuant to Arizona Const. art. VI, § 20.