**Carson Wayne NEWTON, Plaintiff,**

**v.**

**UNIWEST FINANCIAL CORP., a corporation; United Savings Bank of Wyoming, F.S.B., a Federal stock savings bank; Uniwest Service Corp., a corporation; Uniwest Mortgage Company, a corporation; the Federal Deposit Insurance Corporation, an agency of the United States, as Receiver for Buena Vista Bank and Trust Co.; Mark Perlmutter and Gary H. McGill, Defendants.**

**No. CV–S–87–706 HDM.**

United States District Court, D. Nevada.

July 11, 1990.

---

Peter C. Bernhard, Charlotte M. Matanane, Schreck, Jones, Bernhard, Woloson & Godfrey, Las Vegas, Nev., for plaintiff.

David W. Stark, Kristen Mix Myer, Otten, Johnson, Robinson, Neff & Ragonetti, P.C., Denver, Colo., Gary R. Goodheart, Jones, Jones, Close & Brown, Chartered, Las Vegas, Nev., for Uniwest Financial, United Sav. Bank of Wyo., Uniwest Services Corp.

Jack M. Englert, Jr., Holland & Hart, Denver, Colo., W. Leslie Sully, Sully, Lenhard & Raizin, Las Vegas, Nev., for F.D.I.C.

Bruce M. Judd, Wright & Stewart, Las Vegas, Nev., Kevin Michael Shea, Curt Vazquex, Holme Roberts & Owen, Denver, Colo., for G. McGill.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

McKIBBEN, District Judge.

The Court having considered the Memorandum Briefs and memoranda of points and authorities of all of the parties regarding the Second Motion to Dismiss and Motion for Summary Judgment of Defendants Uniwest Financial Corporation, Uniwest Service Corporation, Uniwest Mortgage Company and Rocky Mountain, F.S.B., heard oral argument on this Motion on March 22, 1990, and being fully advised in the premises makes the following Findings of Fact, Conclusions of Law and Order.

### CLAIMS OF THE PARTIES

Plaintiff Carson Wayne Newton ("Newton") commenced this action in September, 1987 against, among others, Defendants Uniwest Financial Corporation ("UFC"), Uniwest Service Corporation ("USC"), Uni-

west Mortgage Company ("UMC"), former Defendant United Savings Bank of Wyoming ("USB")[1], Gary H. McGill and Mark Perlmutter. Newton alleges that he borrowed money from Defendant USC in late 1984 for the purpose of investing in a limited partnership. (Amended Complaint, ¶¶ 13, 15.) Newton asserts that USC's loan to him was made solely to facilitate his purchase of stock in Defendant UFC, the parent company of USC and former Defendant United Savings Bank of Wyoming. (Amended Complaint, ¶ 15.) Newton alleges that he bought 5,000 shares of UFC preferred stock in January of 1985 (Amended Complaint, ¶ 15), and that he "either still owns" the stock or "has transferred the stock to the partnership." (Amended Complaint, ¶ 34.) Newton further alleges both that this stock "is now substantially worthless" and that it was "valueless" at the time he purchased it, because of the losses disclosed in UFC's 1985 Form 10–K and subsequent public filings. (Amended Complaint, ¶¶ 34, 50, 56, 66.)

The essence of Newton's claims is that UFC's 1983 annual report, 1983 Form 10–K and September 30, 1984 Form 10–Q contained untrue statements of material fact and omitted material facts, and that he "did not know" about these alleged untrue statements of material fact and omissions of material fact. (Amended Complaint, ¶ 32.) Newton claims that he "relied upon the material truthfulness" of these reports and upon "the implicit representations by Defendants that all material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading had been disclosed." (Amended Complaint, ¶ 39.) Newton alleges that he has suffered harm as a result of his purchase of the UFC stock, and seeks rescission of his purchase of the securities or, in the alternative, money damages. (Amended Complaint, ¶¶ 34, 35, 41, 51, 56, 57, 68, 72.) The Plaintiff has asserted a claim against Defendant UFC in Count I for violation of Section 12(2) of the Securities Act of 1933. The Plaintiff has asserted a claim against all Defendants in Count II for violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10(b)(5) thereunder. The Plaintiff has asserted RICO claims against the Defendants Perlmutter and McGill only in Count III of the Amended Complaint. In Count IV of the Amended Complaint the Plaintiff has asserted a claim against Defendant United Savings Bank of Wyoming for violation of 12 U.S.C. § 1464(q). The Plaintiff has asserted a common law fraud claim against Defendants UFC, Perlmutter and McGill in Count V of the Amended Complaint. In Count VI the Plaintiff requested injunctive relief. This Court in its Order of May 4, 1989 denied the request for that relief. The Plaintiff in Count VII of the Amended Complaint has alleged that each of the Defendants participated in a civil conspiracy to defraud him. In Count VIII of the Amended Complaint the Plaintiff has alleged that he was a third party beneficiary to the loan agreement between Defendant Uniwest Mortgage Company and Fiesta RV Resort Limited Partnership. The Plaintiff has alleged that this loan agreement was breached and that as a result he suffered damages. This claim is asserted against Uniwest Mortgage Company only.

The Defendant Uniwest Service Corp. has asserted a counterclaim against the Plaintiff based upon a promissory note he executed in connection with the $300,000 loan. The Defendant FDIC has also asserted a counterclaim against the Plaintiff based upon a promissory note he executed in connection with the $200,000 loan.

## FINDINGS OF FACT

1. United Savings Bank of Wyoming, F.S.B. ("United Savings") was a bank chartered under the laws of the United States.

2. On December 15, 1988, the Federal Home Loan Bank Board declared United

---

1. On December 15, 1988, the Federal Savings & Loan Insurance Corporation ("FSLIC") was appointed as receiver for United Savings Bank of Wyoming, which was immediately acquired by Rocky Mountain Federal Savings and Loan Association and which became known as "Rocky Mountain, F.S.B." (Exhibit A). Rocky Mountain, F.S.B. was substituted as a party in this action by the Court's Order dated September 25, 1989.

Savings to be insolvent, and appointed FSLIC as receiver for United Savings.

3. On December 15, 1988, the Federal Home Loan Bank Board approved the acquisition of Rocky Mountain Federal Savings and Loan Association by Rocky Mountain Financial Corporation, a Delaware Corporation, and approved the supervisory conversion of Rocky Mountain Federal Savings and Loan Association from a federal mutual savings and loan association to a federal stock savings bank form of organization, to be known as Rocky Mountain, F.S.B.

4. FSLIC, as receiver for United Savings, transferred substantially all of the assets and liabilities of United Savings to Rocky Mountain, F.S.B.

5. In late 1984, Plaintiff Carson Wayne Newton ("Newton") took part in an investment that involved the purchase of 5,000 shares of preferred stock of Defendant Uniwest Financial Corporation.

6. Newton learned of this investment opportunity through the advice of his lawyers from the law firm of Mortimer, Sourwine, Mousel, Sloane & Knobel in Reno, Nevada.

7. Lawyers from the firm of Mortimer, Sourwine, Mousel, Sloane & Knobel represented Newton throughout the negotiations relating to this investment.

8. Newton received a loan in the amount of $300,000.00 from Uniwest Service Corp. as evidenced by Promissory Note No. 40151–01 dated December 27, 1984 (the "Note").

9. Uniwest Service Corp. was a wholly owned subsidiary of United Savings Bank of Wyoming.

10. When the FSLIC was appointed receiver for United Savings Bank of Wyoming, it acquired the note as part of the assets of the Bank. The FSLIC then transferred the note as part of the assets of United Savings to Rocky Mountain F.S.B.

11. Rocky Mountain, F.S.B. is the holder of the Note.

12. Newton received the funds evidenced by the Note, and used those funds to finance, in part, his purchase of the Uniwest Financial Corporation stock.

13. Newton's lawyers advised him to enter into the Note as part of the investment transaction.

14. Newton both executed the Note and participated in the investment involving the purchase of stock in Uniwest Financial Corporation on the advice of counsel.

15. Newton had absolutely no contact with any of the parties to this action during the relevant time period, and acted at all times through his counsel.

16. Newton's lawyers, Frank Fahrenkopf, David L. Mousel, Julien G. Sourwine, Wayne L. Mortimer and Douglas A. Sloane all joined Newton in this investment, and each of these gentlemen received a loan from Buena Vista Bank and Trust like Newton.

17. Mr. Fahrenkopf, Mr. Mousel, Mr. Sourwine, Mr. Mortimer and Mr. Sloane have repaid their loans from Buena Vista Bank and Trust.

18. In this action, Newton has alleged that there were material misrepresentations in the 1983 Annual Report of Uniwest Financial Corporation, the 1983 Form 10–K of Uniwest Financial Corporation, and the September 30, 1984 Form 10–Q of Uniwest Financial Corporation (hereinafter the "Uniwest Financial documents"). There is no evidence that any of the statements contained in those documents were false or fraudulent.

19. Newton made his purchase of the Uniwest Financial Corporation Series B Preferred Stock by way of a document entitled "Uniwest Financial Corp. Series B Preferred Stock Subscription Agreement and Investment Representation" ("Subscription Agreement"). That document recited that Newton had been provided with the following:

(1) UFC's 1983 Annual Report to the shareholders ("1983 Annual Report");

(2) UFC's Annual Report on Form 10–K under the Securities Exchange Act of 1934 ("1983 10–K");

(3) UFC's Quarterly Report on form 10–Q under the Securities Exchange Act of 1934 ("September 30, 1984 10–Q"); and

(4) The Series B Preferred Stock Statement of Rights and Privileges.

20. Newton acknowledges that he did not read the 1983 Annual Report, the 1983 10–K, or the September 30, 1984 10–Q prior to purchasing the stock. (Newton deposition pages 76–77).

21. Newton did not rely on any statements made in the 1983 Annual Report, the 1983 10–K, or the September 30, 1984 10–Q in reaching his decision to purchase the UFC Series B Preferred Stock. Instead, he relied upon the advice of his attorneys.

22. Newton claims there were misrepresentations of material facts and omissions of material facts in the 1983 Annual Report, the 1983 10–K, and the September 30, 1984 10–Q as detailed in paragraph 30 of his Amended Complaint. In general, Newton claims that UFC's loan loss provisions were under-reported by approximately $11,-000,000 on those documents and that these loan loss provisions did not, therefore, conform with Generally Accepted Accounting Principles ("GAAP") applied on a consistent basis. The gravamen of Newton's contention is that at least part of the $11,-000,000 provision for loan losses on real estate loans which was reported in UFC's 1985 Form 10–K was identifiable by UFC's management in 1983 and the first nine months of 1984, and, thus, should have been disclosed in the 1983 and 1984 reports. The Defendants dispute this.

23. The 1983 Form 10–K, on its face, purports to be prepared in accordance with GAAP applied on a consistent basis. This is reflected by the report of UFC's independent Certified Public Accountants, Main Hurdman, found at page 26 of the 1983 Form 10–K.

24. To support further their contention that the loan loss provisions were not under reported, the Defendants have filed the Affidavit of Daniel J. Nickless, a Certified Public Accountant licensed to practice in the State of Colorado, and the former controller of UFC. In essence, Mr. Nickless states that in his opinion, the 1983 Annual Report, the 1983 Form 10–K, and the September 30, 1984 Form 10–Q accurately reflected UFC's loans and real estate owned and net loss and provided an allowance for loan losses necessary to fairly present the assets of UFC during the applicable time periods.

25. Further, the Nickless Affidavit states that the $11,000,000 provision for losses on loans and real estate owned reported in UFC's 1985 Form 10–K was the result of many economic factors including, specifically, the general decline of real estate values in the Rocky Mountain Region, the impact of economic problems within the oil producing states, and the financial deterioration of many of United Savings' borrowers. These economic factors caused the Federal Home Loan Bank Board to order re-appraisals of the properties securing various loans. Those re-appraisals were begun in the spring of 1986 and were not completed until August, 1986. UFC's 1985 Form 10–K was filed with the Securities and Exchange Commission in October of 1986.

26. The Nickless Affidavit establishes that the deterioration in value of UFC's loan portfolio and other assets of the companys' subsidiaries was not identifiable by UFC's management in 1983 or 1984. On the contrary, the evidence establishes that the deterioration was not identifiable by UFC Management until August 1986 when the re-appraisals were completed.

27. The Nickless Affidavit further establishes that the financial information contained in the 1983 Annual Report, the 1983 Form 10–K and September 30, 1984 Form 10–Q was presented in accordance with generally accepted accounting principals ("GAAP").

28. Newton has produced no evidence by way of affidavit, deposition transcript or otherwise to support his contention that the loan loss provisions were materially under reported or that the 1983 Annual Report, the 1983 Form 10–K or the September 30, 1984 Form 10–Q were not prepared in accordance with GGAP.

29. Newton did not rely upon any statements made in the Uniwest Financial documents before deciding to purchase the

stock. Instead, he relied upon the advice of his counsel.

30. Newton has produced no evidence by way of affidavit, deposition transcript or otherwise, to support his contention that John Keilly, the promoter of Fiesta RV Resort Limited Partnership, was an agent of any of the Defendants.

31. On April 25, 1985, Newton assigned his shares of Uniwest Financial Corporation Series B Preferred Stock to Fiesta RV Resort Limited Partnership. In exchange for his capital contribution, Newton received a 22.41% interest in the partnership. Newton subsequently received an annual 12% dividend on the stock in the amount of $60,000.00 which he then assigned to the partnership.

32. There is no evidence that Newton suffered recoverable damages as a result of the investment and stock purchase transaction.

33. On January 21, 1985, Uniwest Mortgage Company and Fiesta RV Resort Limited Partnership entered into a Loan Agreement which called for a certain portion of the loan funds to be advanced directly to the Fiesta RV Resort limited partners to pay off the partner loans.

34. On April 12, 1985, Uniwest Mortgage Company and Fiesta RV Resort Limited Partnership entered into a First Amendment to the Loan Agreement, which provided that certain portions of the loan funds could be used to pay any encumbrances on the property. There is no evidence that the loan funds were not used to pay encumbrances on the property.

35. Rocky Mountain, F.S.B., as successor-in-interest to United Savings, has asserted a counterclaim against Newton to recover the indebtedness due under the Note.

36. Rocky Mountain, F.S.B. is entitled to recover the interest due under the Note, plus accrued and accruing interest.

## CONCLUSIONS OF LAW

37. This Court has jurisdiction pursuant to Section 27 of the Securities Exchange Act of 1934 (15 U.S.C. § 78(aa)); 18 U.S.C. § 1964(a); 28 U.S.C. § 1331 and the doctrine of pendent jurisdiction.

38. The entry of summary judgment is appropriate when "the pleadings and affidavits, together with any other extraneous materials, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Hershman v. Sierra Pacific Power Co.,* 434 F.Supp. 46, 48 (D.Nev. 1977) "The party moving for summary judgment has the initial responsibility of informing the District Court of the basis for its motion, and identifying those portions of the record showing the absence of a genuine issue of fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "The burden then shifts to the non-moving party to present evidence sufficient to support a verdict in its favor on every element of its claim for which it will carry the burden of proof at trial." *Id.* at 322–23, 106 S.Ct. at 2552–53; *In re Apple Computer Securities Litigation,* 886 F.2d 1109, 1113 (9th Cir.1989). The Court must give the non-moving party the benefit of all reasonable inferences that could be drawn from the facts. *Guam Federation of Teachers, Local 1581 of, A.F.T. v. Ysrael,* 492 F.2d 438, 441 (9th Cir.) *cert. den.* 419 U.S. 872, 95 S.Ct. 132, 42 L.Ed.2d 111 (1974). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett, supra,* 477 U.S. at 322, 106 S.Ct. at 2552. In addition to the memoranda and arguments of counsel, the Court has considered extensive submissions of documents, excerpts of deposition transcripts, and affidavits, and the Court finds that this case is ripe for disposition by summary judgment.

39. In Count I of the Amended Complaint Newton has alleged that Uniwest Financial Corporation violated Section 12(2) of the Securities Act of 1933.

40. The elements of a cause of action for violation of Section 12(2) of the Securities Act of 1933 are:

(a) an offer or sale of a security;

(b) by the use of any means of interstate commerce;

(c) through a prospectus or oral communication;

(d) which includes an untrue statement of a material fact or omits to state a material fact.

*In re Itel Securities Litigation,* 89 F.R.D. 104, 115 (1981), *aff'd,* 791 F.2d 672 (9th Cir.1986).

41. Plaintiff has failed to present any evidence to contradict the Nickless affidavit.

42. Newton has failed as a matter of law to establish that any of the Uniwest Financial documents contained an untrue statement of a material fact or omitted to state a material fact.

43. Even if Newton establishes the existence of untrue statements of material fact or omissions of material fact in the Uniwest Financial documents, Newton has failed as a matter of law to establish that he has suffered damages as a result of any alleged untrue statements. 15 U.S.C. § 77*l*(2); *H.S. Bloomenthal, Securities Law Handbook* 698 (1987).

44. Because Newton has failed to establish a genuine issue of material fact and Uniwest Financial Corporation is entitled to judgment as a matter of law, summary judgment should enter in favor of Uniwest Financial Corporation on Count I of Plaintiff's First Amended Complaint. *Celotex Corp. v. Catrett, supra.*

45. Newton has alleged that Uniwest Financial Corporation violated and Uniwest Service Corporation, Uniwest Mortgage Company and United Savings aided and abetted the violation of section 10(b) of the Securities Exchange Act of 1934 and Rule 10(b)–5.

46. The elements of a cause of action for liability under section 10(b) of the Securities Exchange Act of 1934 are:

(a) the purchase or sale of any security;

(b) by use of any means or instrumentality of interstate communication, or of the mails, or of any facility of any national securities exchange;

(c) by the use of any manipulative or deceptive device or contrivance.

15 U.S.C. § 78j(b).

47. The elements of a cause of action for liability under Rule 10b–5 are:

(a) the purchase or sale of any security;

(b) by use of any means or instrumentality of interstate communication, or of the mails, or of any facility of any national securities exchange;

(c) while employing any device, scheme or artifice to defraud, or

(d) while making any untrue statement of a material fact or omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or

(e) while engaging in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.

17 C.F.R. § 240.10b–5.

48. Newton has failed as a matter of law to establish the existence of any manipulative or deceptive device or contrivance, the employment of any device, scheme or artifice to defraud, the existence of any untrue statement of a material fact or omission of a material fact, or any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.

49. Moreover, Newton has failed, as a matter of law, to establish that he suffered damages as a result of the alleged misrepresentations or omissions of material fact. H.S. Bloomenthal, *Securities Law Handbook,* 698 (1987).

50. The elements of a cause of action for aider and abetter liability under Section 10(b) of the Securities Exchange Act are:

(a) the existence of an independent primary wrong;

(b) actual knowledge by the alleged aider and abetter of the wrong and of his role in furthering it; and

(c) substantial assistance by the aider and abetter in the wrong.

*Harmsen v. Smith,* 693 F.2d 932, 943 (9th Cir.1982); *see also Orloff v. Allman,* 819 F.2d 904, 907 (9th Cir.1987).

■ 51. Newton cannot establish aider and abetter liability against Uniwest Service Corporation, Uniwest Mortgage Company or United Savings in the absence of establishing a prima facie case against Uniwest Financial Corporation for the primary violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5.

52. Even if Newton establishes the existence of an independent primary wrong, Newton has failed as a matter of law to establish the second and third elements of aider and abetter liability.

53. There is no evidence that Uniwest Service Corporation, Uniwest Mortgage Company or United Savings had actual knowledge of the alleged securities fraud, nor is there evidence that those defendants were aware of their alleged role in furthering the securities fraud scheme.

■ 54. The determination of whether an aider and abetter gave substantial assistance to a securities fraud scheme is a question of law. *Edwards & Hanly v. Wells Fargo Securities Clearance Corp.,* 602 F.2d 478, 484 (2nd Cir.1979), *cert. den.,* 444 U.S. 1045, 100 S.Ct. 734, 62 L.Ed.2d 731 (1980).

■ 55. A party must show a substantial causal connection "between the culpable conduct of the alleged aider and abetter and the harm to the Plaintiff" in order to establish substantial assistance in the wrong. *Mendelsohn v. Capital Underwriters, Inc.,* 490 F.Supp. 1069, 1084 (N.D.Calif.1979); *see also Landy v. FDIC,* 486 F.2d 139, 163–64 (3rd Cir.1973), *cert. den.* 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974).

56. In this case, the substantial assistance of Uniwest Service Corporation, Uniwest Mortgage Company and United Savings to the alleged securities fraud must relate to the alleged misrepresentations in the Uniwest Financial documents. *Terrydale Liquidating Trust v. Gramlich,* 549 F.Supp. 529, 531 (S.D.N.Y.1982). Newton has failed to establish any genuine issue as to any material fact relating to such a causal connection between the alleged misrepresentations and the actions of Uniwest Service Corporation, Uniwest Mortgage Company and United Savings.

57. There is no evidence whatsoever of any involvement by Uniwest Service Corporation, Uniwest Mortgage Company or United Savings in the preparation or dissemination of the financial report of Uniwest Financial Corporation.

■ 58. Even if Newton establishes the elements necessary for recovery on his Section 10b-5 claims, those claims against Defendant United Savings and its successor-in-interest, Defendant Rocky Mountain, F.S.B. are barred by the doctrine of *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 457–59, 62 S.Ct. 676, 679–80, 86 L.Ed. 956 (1942). *See also Dasco, Inc. v. American City Bank & Trust Co.,* 429 F.Supp. 767, 770 (D.Nev.1977); *RSR Properties, Inc. v. FDIC,* 706 F.Supp. 524, 531 (W.D.Tex.1989); *FSLIC v. Murray,* 853 F.2d 1251, 1256–57 (5th Cir.1988); *FDIC v. Cremona Co.,* 832 F.2d 959 964 (6th Cir. 1987), *cert. dismissed sub nom., Gonda v. FDIC,* 485 U.S. 1017, 108 S.Ct. 1494, 99 L.Ed.2d 883 (1988).

59. Because Newton has failed to raise a genuine issue of material fact regarding his section 10(b) and Rule 10b-5 claim, and because Defendants are entitled to judgment as a matter of law, summary judgment must enter in favor of Uniwest Financial Corporation, Uniwest Service Corporation, Uniwest Mortgage Company and Rocky Mountain, F.S.B. on Count II of Plaintiff's First Amended Complaint. *Celotex Corp. v. Catrett, supra.*

■ 60. Count IV of Newton's First Amended Complaint, which alleges that former Defendant United Savings violated 12 U.S.C. § 1464(q), is barred by the *D'Oench Duhme* doctrine because it is based upon an alleged oral condition to his loan which is unenforceable against Rocky Mountain, F.S.B. as successor-in-interest to

355

the failed institution, United Savings. *D'Oench, Duhme, supra,* 315 U.S. at 459–460, 62 S.Ct. at 680–81; *Yankee Bank for Finance Savings, F.S.B. v. Task Asso., Inc.,* No. 88–CV–224, slip opinion at 13, 1989 WL 87430 (N.D.N.Y. August 4, 1989); *see also FDIC v. Eagle Properties, Ltd.,* 664 F.Supp. 1027, 1054 n. 5 (W.D.Tex.1985).

61. Newton has raised no genuine issue of material fact regarding his unlawful tying claim and Defendant Rocky Mountain, F.S.B. is entitled to judgment as a matter of law. Therefore, summary judgment must enter in favor of Defendant Rocky Mountain, F.S.B. and against Plaintiff on Count IV of Plaintiff's First Amended Complaint. *Celotex Corp. v. Catrett, supra.*

62. Newton has alleged that Uniwest Financial Corporation is liable for damages based on a theory of common law fraud, because of the alleged misrepresentations and omissions of material fact in the Uniwest Financial documents.

63. The elements of fraud under Nevada law are:

(a) a false representation;

(b) made with knowledge or belief that it is false or without a sufficient basis of information;

(c) intent to induce reliance;

(d) justifiable reliance; and

(e) damages resulting from the reliance.

*Ries v. Olympian, Inc.,* 103 Nev. 709, 747 P.2d 910, 911 (1988).

64. Newton has failed, as a matter of law, to establish that any such false representations or omissions of material fact exist in the Uniwest Financial documents.

65. Newton has also failed, as a matter of law, to establish that he suffered damages as a result of his reliance on any alleged false representations or omissions of material fact.

66. Newton has failed to raise a genuine issue of material fact regarding his common law fraud claim, and Defendant is entitled to judgment as a matter of law. Therefore, summary judgment must enter in favor of Defendant Uniwest Financial

Corporation and against Plaintiff on Count V of Plaintiff's First Amended Complaint. *Celotex Corp. v. Catrett, supra.*

67. In Count VI of Newton's First Amended Complaint, Newton seeks the entry of an injunction to prevent Uniwest Service Corporation's collection of the Note. This request for an injunction was denied by this Court's Order dated May 4, 1989. Additionally, this claim is moot based upon the Court's Findings of Fact and Conclusions of Law relating to Newton's other claims.

68. Count VII of Newton's First Amended Complaint alleges a claim of civil conspiracy against all of the Defendants to induce Newton to take loans for the purchase of the Uniwest Financial stock.

69. Under Nevada law, "[a]n actionable civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage." *Collins v. Union Federal Savings & Loan,* 99 Nev. 284, 662 P.2d 610 (1983).

70. The 9th Circuit has noted that a civil conspiracy is defined as:

"A combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage ... the gist of the action is not the conspiracy charge, but the 'independent' tort working damage to the Plaintiff."

*Dolemen v. Meiji Mutual Life Insurance Co.,* 727 F.2d 1480, 1483, n. 3 (9th Cir.1984) (cits. om.; emphasis added).

71. Since the Court has found that Newton has failed to establish his claim of securities fraud and common law fraud against Uniwest Financial Corporation, Newton's claim of civil conspiracy against Uniwest Financial Corporation, Uniwest Service Corporation, Uniwest Mortgage Company and Rocky Mountain, F.S.B. must also fail.

72. Even if the Court's ruling on Newton's claim for securities fraud and common law fraud was not dispositive of this issue, Newton has failed to raise any genuine issue of material fact establishing De-

fendants' participation in an unlawful act or in a lawful act in an unlawful manner or the existence of an agreement.

73. Uniwest Financial Corporation, Uniwest Service Corporation, Uniwest Mortgage Company and Rocky Mountain, F.S.B. are entitled to summary judgment on Count VII of Newton's First Amended Complaint as a matter of law.

74. Count VIII of Newton's Amended Complaint asserts that he was a third-party beneficiary of the Loan Agreement between Uniwest Mortgage Company and Fiesta RV Resort.

[11] 75. The Loan Agreement, by its terms, must be construed in accordance with the laws of the State of Arizona. As a matter of law, Newton has failed to establish that he was a third-party beneficiary of the Loan Agreement. *Norton v. First Federal Savings*, 128 Ariz. 176, 624 P.2d 854, 856 (1981); *California Cotton Oil Corp. v. Rabb*, 88 Ariz. 375, 357 P.2d 126, 129 (1960); *Irwin v. Murphey*, 81 Ariz. 148, 302 P.2d 534, 536–37 (1956).

76. Even if Newton establishes that he is a third-party beneficiary of the Loan Agreement, absent terms in the Loan Agreement which prohibited change or modification of the duty to an intended beneficiary, the promisor and promisee retained the power to discharge or modify the duty by subsequent agreement. *Karo v. San Diego Symphony Orchestra Asso.*, 762 F.2d 819, 822 (9th Cir.1985); *Restatement (Second) of Contracts* § 11.

77. The Loan Agreement was properly modified, and the loan funds were disbursed in accordance with the terms of the modification. Newton has failed, therefore, as a matter of law, to establish a genuine issue of material fact which precludes entry of summary judgment against him on Count VIII of his Amended Complaint. Summary judgment must therefore enter in favor of Uniwest Mortgage Company and against Plaintiff on Count VIII of Plaintiff's First Amended Complaint.

78. Newton's defenses to the payment of the sums due under the Note are the allegations of his eight Counts for relief. The Court has disposed of those allegations, and Newton, therefore, has no de-

fense to payment under the Note, as a matter of law.

79. Defendant Rocky Mountain F.S.B. is entitled to recover the unpaid principal and interest due under the note.

### ORDER

Based upon the foregoing Findings of Fact and Conclusions of Law, the Court Orders that:

(i) summary judgment shall enter in favor of Defendants Uniwest Financial Corporation, Uniwest Service Corporation, Uniwest Mortgage Company and Rocky Mountain, F.S.B. and against Plaintiff Carson Wayne Newton on Counts I, II, IV, V, VII, and VIII of Newton's First Amended Complaint;

(ii) summary judgment shall enter in favor of Rocky Mountain, F.S.B. and against Plaintiff Carson Wayne Newton on Rocky Mountain, F.S.B.'s Counterclaim against Newton; and

(iii) Rocky Mountain, F.S.B. shall submit to the Court within ten (10) days of the date of this Order an affidavit reflecting the principal, interest and per diem amount owed on the promissory note.